## Elkhorn & Beaver Valley Railway Company v. Martin, et al.

(Decided May 26, 1922.)

### Appeal from Floyd Circuit Court.

1. Damages—Pleading—Instructions.—In an action by a landowner against a railroad company for damages to his land by reason of faulty construction of the railroad, where the several items of damages are specified in the pleadings, it was error in the court to submit in its instructions any item of damage not embraced in the pleadings.

2. Damages—Excessive Damages.—Evidence examined and the verdict held to be grossly excessive.

3. Damages—Instructions.—Where landowners had conveyed to a company contemplating the erection of a railroad a narrow strip through their farm for a valuable consideration "free from dam-

ages resulting from the prudent construction and operation of said railroad," and after the company had done some work on the land a controversy arose as to whether all the land was embraced in the deed, and that controversy was adjusted for an additional compensation and a second deed was made reciting that the consideration therein named was accepted in full payment of the right of way and in full liquidation and settlement of all claims for damages up to that time, the court erroneously permitted in its instructions, a recovery for faulty construction prior to that time.

4.    Damages—Measure of Damages.—Where the injury to the property results from a permanent structure, the correct measure of damages is the difference between the market value of the property before the injury and that after the injury.

5.    Damages—Evidence.—Evidence on such a trial as to the illness of the landowner or members of his family because of the standing water was improper where there is no allegation of special damage.

KIRK & KIRK and WORTHINGTON, COCHRAN, BROWNING & REED for appellant.

C. B. WHEELER for appellees.

Opinion of the Court by Turner, Commissioner—Reversing.

Prior to the 14th of December, 1911, appellees were the owners of about one hundred and seventy-five acres of land on Beaver creek in Floyd county upon part of which they had theretofore sold and conveyed the mineral rights.

On that day they conveyed to appellant a narrow strip of the land, and it was understood between the parties at the time appellant contemplated the erection of a railroad over this strip. In the spring of 1913 appellant began the construction of such a railroad and did some work on the property of appellees; but a contention soon arose between the company and the landowners as to the right of the former to construct the railroad over certain parts of the land claimed by appellees not to have been embraced in the deed of December, 1911. In settlement of this controversy, on the 4th day of August, 1913, appellees executed a second conveyance to the company for a strip of land through the balance of their lands. The consideration named in the first conveyance was eight hundred dollars, and the consideration named in the second conveyance was seventeen hundred and fifty dollars; so that appellees for this narrow strip of land

through their farm have received twenty-five hundred and fifty dollars from appellant.

In the first deed the property is conveyed "To the said party of the second part, its successors and assigns forever, free from damages resulting from the prudent construction and operation of said railroad and facilities appurtenant thereto."

In the second deed of August, 1913, it is recited:

"The consideration hereinbefore set out is accepted by the parties of the first part herein, in full payment for said right of way and in full liquidation and settlement of any and all claims for damages which the said parties of the first part or either of them has or may have against the party of the second part herein by reason of its entering upon said land and grading the same or a portion thereof prior to the execution and delivery of this deed."

Before the execution of the second deed this controversy had arisen between the parties and the deed by its terms was in full settlement of all matters between them up to that time, including all claims for damages appellees had suffered by reason of the entry upon their land and the grading of a part thereof.

The company then proceeded to complete its railroad, running along the strip for about three-quarters of a mile. The whole tract of land contained about one hundred and seventy-five acres, of which only about eighteen or twenty acres were cultivating land and the other very rough and mountainous.

The strip of land over which the road was constructed ran chiefly through the bottom lands, and this is an action instituted in 1918 wherein appellees ask judgment against appellant and its assignee, the Chesapeake & Ohio Railway Company, for ten thousand dollars in damages to their farm because of the alleged wrongful construction and operation thereof.

The specific causes of complaint set forth in the orignal petition are, (1) that in constructing the roadbed defendant wrongfully constructed certain culverts under the same so as to cause the surface water accumulating above the roadbed to run over and upon the plaintiffs' cultivating land and injure the same; (2) that defendant wrongfully made certain fills in the roadbed so that the same backed up the water over plaintiffs' lands above the roadbed in such way as to cause the water to stay and remain thereon, whereby their said land was damaged; (3) that defendant wrongfully went on the outside of its

right of way on to plaintiffs' land and dug and removed therefrom the dirt and soil whereby the same was injured.

These are the only causes of complaint in the original petition; but on the 5th of March, 1920, the plaintiffs tendered and offered to file an amended petition wherein they allege appellant negligently constructed the railroad over the strip of land conveyed to it and negligently and wrongfully put into the creek bed running through plaintiffs' land a large amount of rock, dirt, timber and other material, thereby filling up the creek and causing the current and channel thereof to change and cut away and wash away plaintiffs' land on the opposite side of the creek. Other causes of complaint were set up by this tendered amended petition which were not embraced in the original petition.

The court, upon consideration, declined to permit this amendment to be filed and the same is made a part of the record by bill of exceptions.

In the original petition the plaintiffs alleged the culverts and fills which resulted in the injuries complained of were only temporary and could be remedied and future injury averted, but that defendants had failed and refused to remedy the same. In the answer, however, it is alleged by defendants the construction was permanent, and therefore on the trial plaintiffs, by leave of court, filed a second amended petition wherein they allege that if this contention of defendants be sustained, and the plaintiffs are required to accept one judgment for all of the damages, they were entitled to recover a judgment for ten thousand dollars instead of twenty-five hundred dollars asked in the original petition.

Although there was no issue in the pleadings as to the faulty construction of the road at the point where it is alleged the creek was filled in and the channel changed, and although the court had refused to permit an amendment to be filed making this issue, the instruction authorized a recovery because of such alleged faulty construction as well as for certain other new items embraced in the amendment tendered and which the court declined to permit to be filed. On a trial the jury returned the following verdict:

"We the jury agree and find the fill on the upper end of the farm and the fill and excavation on the lower end of the farm as a permanent construction. We also agree that No. 2 and No. 4 culverts are temporary construction.

We the jury agree and find for the plaintiff to the amount of $1,300.00, thirteen hundred dollars against the Elkhorn and Beaver Valley Railway Company, for permanent damage. We the jury find for the plaintiff for temporary damage against the Elkhorn and Beaver Valley Railway Company, $50.00, fifty dollars, for temporary damage. We the jury agree and find for the plaintiff against the Chesapeake & Ohio Railway Company for temporary damages $150.00, one hundred and fifty dollars.''

From this verdict it will be seen the jury finds the fill on the upper end of the farm, and the fill and excavation on the lower end of the farm to be permanent construction, and these two items manifestly are at the point where it is said the creek was filled in and at the point where it is charged defendant went outside of the right of way and removed the dirt from plaintiffs' land; and for these two items alone the verdict assesses thirteen hundred dollars in damages. It further finds two culverts to be only temporary construction, and assesses against appellant fifty dollars for the operation of the same, and against the Chesapeake & Ohio Railway Company one hundred and fifty dollars.

It is clear the court erred in submitting to the jury any item or element of damage which was not embraced in the pleadings, and this would seem to be a sufficient ground upon which to reverse the judgment; but there are other and serious complaints urged by appellant which, under the circumstances, we deem it proper to consider.

Even if all the items of damages were properly presented by the pleadings and were properly submitted to the jury by instructions, it is perfectly clear the verdict is grossly excessive. The plaintiffs had already received from the railroad company twenty-five hundred and fifty dollars for a little, narrow strip of ground through their farm, when, as the evidence shows, that same farm as a whole was assessed at one thousand dollars. Not only so, it is only claimed, even if the item could be considered, that there was washed away not exceeding one-quarter of an acre of land because of the filling in of the creek, and it is shown the soil was taken from only about one-quarter of an acre outside of the right of way at the other end of the farm. And yet this jury returns a verdict for those two items of thirteen hundred dollars when the whole farm, of which these two

little parcels, are only a small part, is assessed at one thousand dollars.

Courts are established for the administration of justice, and should not permit, under any circumstances, an absurd and patently unjust result to be reached through the forms of law. The two little pieces of land did not exceed in the aggregate one-half acre, and even if they each represented the most valuable part of the cultivating land on the place, the amount of the verdict is so absurdly excessive as to be revolting to even the commonest sense of justice.

The recital in the deed of the 4th of August, 1913, that the plaintiffs accepted in full payment for the right of way then conveyed, and in full liquidation and settlement of any and all claims for damages which they had sustained by reason of the entry upon the land and grading the same prior to that time, manifestly precludes them in this action from recovering for any permanent injury by reason of construction prior to that time, whether it was prudent construction or not. They accepted the seventeen hundred and fifty dollar consideration recited in that deed in full liquidation and settlement of all claims for damages which had accrued up to that time, and it matters not whether the construction up to that time had been faulty or not, for if it was faulty they have been paid for it. Upon another trial the court will, in its instructions, not authorize a recovery for any permanent injury resulting from construction prior to that time.

The court in its instructions authorized a recovery on account of the removal of dirt and soil from the small space at the northern end of the property and directed the jury to "find for the plaintiffs against the Elkhorn & Beaver Valley Railway Company on this item the value, if any, of the soil and dirt so removed, and the damage, if any, to the lot from which it was taken." This injury is found by the jury to be of a permanent nature and the correct measure of damages therefor was the difference between the market value of the property before the injury and that after the injury. L. H. & St. L. Railway Co. v. Roberts, 144 Ky. 820; Illinois Central Railway Co. v. Haynes, 122 S. W. 210; Illinois Central Railway Co. v. Smith, 110 Ky. 203. On another trial the court will cause to be eliminated all the evidence referring to the illness of Martin or any of his family because of the standing water. Under the state of the pleadings, there being no allegations of special damage, this evidence was clearly

incompetent. The court will, likewise, sustain objections to the evidence with reference to the little granddaughter of Martin who died of typhoid fever, as there is no connection whatsoever shown between her death and the fact that she played around this standing pool of water. And even if there was a cause of action in anyone it may be doubted whether the grandfather would have a right of recovery.

On another trial the court in permitting the witnesses to fix what they conceive to be the damages under the several items complained of, will be governed by the rules of evidence and the manner of introducing and receiving such testimony laid down in the case of Illinois Central v. Smith and Illinois Central v. Haynes, *supra*.

The judgment is reversed with directions to permit the parties to amend their pleadings and for further proceedings consistent herewith.